Robert C. Moest, Of Counsel, SBN 62166
**THE BROWN LAW FIRM, P.C.**
2530 Wilshire Boulevard, Second Floor
Santa Monica, CA 90403
Telephone: (310) 915-6628
Facsimile: (310) 915-9897
Email: RMoest@aol.com

*Counsel for Plaintiff*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEAH ARD, derivatively on behalf of SKYWORKS SOLUTIONS, INC., | |
| Plaintiff, | Case No.: |
| v. | |
| LIAM K. GRIFFIN, KRIS SENNESAEL, ALAN S. BATEY, KEVIN L. BEEBE, ERIC J. GUERIN, CHRISTINE KING, SUZANNE E. MCBRIDE, DAVID P. MCGLADE, ROBERT A. SCHRIESHEIM, and MARYANN TURCKE, | **DEMAND FOR JURY TRIAL** |
| Defendants, | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |
| and | |
| SKYWORKS SOLUTIONS, INC., | |
| Nominal Defendant. | |

Verified Shareholder Derivative Complaint

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

Plaintiff Leah Ard ("Plaintiff"), by Plaintiff's undersigned attorneys, derivatively and on behalf of nominal defendant Skyworks Solutions, Inc. ("Skyworks" or the "Company"), files this Verified Shareholder Derivative Complaint against defendants Liam K. Griffin ("Griffin"), Kris Sennesael ("Sennesael"), Alan S. Batey ("Batey"), Kevin L. Beebe ("Beebe"), Eric J. Guerin ("Guerin"), Christine King ("King"), Suzanne E. McBride ("McBride"), David P. McGlade ("McGlade"), Robert A. Schriesheim ("Schriescheim"), and Maryann Turcke ("Turcke") (collectively, the "Individual Defendants," and together with Skyworks, "Defendants") for breaches of their fiduciary duties as directors and/or officers of Skyworks, unjust enrichment, abuse of control, gross mismanagement, waste of corporate assets, and for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and against Defendants Griffin and Sennesael for contribution under Sections 10(b) and 21D of the Exchange Act. As for Plaintiff's complaint against the Individual Defendants, Plaintiff alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Skyworks, legal filings, news reports, securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a shareholder derivative action that seeks to remedy wrongdoing committed by the Individual Defendants from July 30, 2024 through February 5, 2025, inclusive (the "Relevant Period").

2.      Skyworks is a Delaware-incorporated company headquartered in Irvine, California that purports to be "a leading developer, manufacturer and provider of analog and mixed-signal semiconductor products and solutions for numerous applications, including aerospace, automotive, broadband, cellular infrastructure, connected home, defense, entertainment and gaming, industrial, medical, smartphone, tablet, and wearables."[1]

3.      The Relevant Period began on July 30, 2024 when the Company published a press release announcing its financial results for the third quarter of 2024. Among other things, the press release quoted Defendant Griffin, who stated that "Skyworks generated solid results and strong profitability consistent with our guidance"; that "[e]xiting the June quarter, our mobile business is ramping up while our broad markets business continues to recover"; and that "[o]ver the medium-to-long-term, we expect generative AI applications will migrate to the edge, including the smartphone, driving a meaningful replacement cycle and leading to higher levels of RF complexity."

4.      The press release also quoted Defendant Sennesael, who stated the following, in relevant part, regarding the Company's anticipated future revenue:

> For the September quarter, we expect revenue to be $1.00 billion to $1.04 billion with non-GAAP diluted earnings per share of $1.52 at the mid-point of the revenue range. We expect our mobile business to be up approximately 20% sequentially, as demand and supply patterns appear to be normalizing. In broad markets, we expect modest improvement, representing three consecutive quarters of sequential growth. In addition, given our solid capital structure and strong year-to-date cash flow generation, we are announcing another increase to our quarterly dividend.

5.      Later that day, the Company hosted an earnings call with analysts and investors to discuss its results. During the call, in response to an analyst question about the Company's future guidance, Defendant Sennesael stated the following, in relevant part:

---

[1] https://www.sec.gov/ix?doc=/Archives/edgar/data/0000004127/000000412724000131/swks-20240927.htm

Verified Shareholder Derivative Complaint

<Q: Timothy Michael Arcuri - *UBS Investment Bank – Analyst*> And then can you give us a sense also of what December -- I mean, December is kind of all over the map seasonally, but it's up in the range of 10% usually. Is that a reasonable bogey to think about for December?

<A: Kris Sennesael - *Senior VP & CFO*> Yes. So we only guide 1 quarter at a time, and I would really stick with that. But yes**, it's clear that we do expect further sequential growth going into the December quarter, but we will guide next quarter on that.**

6.    Throughout the Relevant Period, the Individual Defendants repeatedly misled investors regarding the Company's anticipated revenue for 2025, expressing confidence, among other things, in the Company's ability to grow its mobile business and capitalize on its growth potential. The Individual Defendants also represented to investors that, to maximize its growth potential, Skyworks was investing in new technologies to diversify its portfolio of offerings. However, these rosy representations failed to disclose, *inter alia*, that the Company was having problems with Apple, its long-standing and largest customer, and that Defendants had oversold the Company's ability to make money off of AI in the smartphone upgrade cycle.

7.    The truth fully emerged on February 5, 2025 when, after the market closed, Skyworks published a press release announcing its financial results for the first quarter of 2025, which contained the Company's guidance for the second quarter of 2025. The press release revealed disappointing financial results for the first quarter and lower-than-anticipated revenue guidance for the second quarter of 2025, which Skyworks chalked up to a "competitive landscape" that had "intensified" in recent years. With respect to the Company's results, Defendant Sennesael stated the following, in relevant part:

For the March quarter, we expect revenue between $935 million to $965 million, with non-GAAP diluted earnings per share of $1.20 at the mid-point of the revenue range. We anticipate a mid-to-high teens sequential decline in mobile, consistent with historical seasonal patterns. In broad markets, we expect additional sequential and year-over-year growth.

In addition, our board of directors has approved a new $2 billion stock repurchase program as part of our disciplined capital allocation strategy.

8.    The same day, the Company hosted an earnings call with analysts and investors to discuss Skyworks's financial results for 1Q25 and guidance for 2Q25. During the call, Defendant Sennesael stated: "***Now let's move on to our outlook for Q2 of fiscal 2025. We anticipate revenue of $935 million to $965 million. We expect our mobile business to decline mid- to high teens sequentially, in line with historical seasonality. In broad markets, we anticipate additional sequential growth and a further improvement in year-over-year growth.***"[2]

9.    On this news, the price per share of the Company's common stock fell $21.48, or over 24%, from a closing price of $87.08 per share on February 5, 2025 to $65.60 per share on February 6, 2025.

10.    Analysts also responded negatively to these disclosures, with Morningstar analysts reporting that the Company's "greatest risk partially came to fruition as the company expects a material 20%-25% reduction in radio frequency chip content per Apple iPhone within the iPhone 17 series arriving later this year."

11.    During the Relevant Period, the Individual Defendants breached their fiduciary duties by personally making and/or causing the Company to make to the investing public a series of materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements that failed to disclose, *inter alia*, that: (1) Defendants did not have reliable information with respect to Skyworks's projected revenue outlook and anticipated growth; (2) Defendants had minimized the risks facing the Company with respect to macroeconomic fluctuations and smartphone upgrade cycles; and (3) the Company's long-standing relationship with its largest customer, Apple, did not ensure that Apple would continue its business relationship

---

[2] All emphasis has been added unless otherwise noted herein.

with the Company for its anticipated iPhone launch. As a result of the foregoing, the Company's statements about its business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

12.    During the Relevant Period, the Individual Defendants further breached their fiduciary duties by causing Skyworks to repurchase its own stock at prices that were artificially inflated due to the foregoing misrepresentations and material omissions. Indeed, during the Relevant Period, approximately 439,379 shares of Skyworks's common stock were repurchased, costing the Company over $39.4 million. As the Company's stock was actually worth only $65.60 per share, the price at which it was trading when markets closed on February 6, 2025, the Company overpaid for repurchases of its own stock by over $28.8 million in total.

13.    The Individual Defendants also breached their fiduciary duties by failing to correct and/or causing the Company to fail to correct these false and misleading statements and omissions of material fact.

14.    Additionally, in breach of their fiduciary duties, the Individual Defendants, during the Relevant Period, caused the Company to fail to maintain adequate internal controls.

15.    In light of the Individual Defendants' misconduct—which has subjected the Company, its President and Chief Executive Officer ("CEO"), and its Senior Vice President ("SVP") and Chief Financial Officer ("CFO") to a federal securities fraud class action lawsuit pending in the United States District Court for the Central District of California (the "Securities Class Action"), and which has further subjected the Company to the need to undertake internal investigations, the need to implement adequate internal controls, losses from the waste of corporate assets, and losses due to the unjust enrichment of the Individual Defendants who were improperly overcompensated by the Company and/or who benefitted from the wrongdoing alleged herein—the Company will have to expend many millions of dollars.

Verified Shareholder Derivative Complaint

16.    The Company has been substantially damaged as a result of the Individual Defendants' knowing or highly reckless breaches of fiduciary duty and other misconduct.

17.    In light of the breaches of fiduciary duty engaged in by the Individual Defendants, most of whom are the Company's current directors, of the collective engagement in fraud and misconduct by the Company's directors, of the substantial likelihood of the directors' liability in this derivative action and of Defendant Griffin's and Defendant Sennesael's liability in the Securities Class Action, and of their not being disinterested and/or independent directors, a majority of the Company's Board of Directors ("Board") cannot consider a demand to commence litigation against themselves on behalf of the Company with the requisite level of disinterestedness and independence.

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a) and 78t-1), SEC Rule 10b-5 (17 C.F.R. § 240.10b-5) promulgated thereunder, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), and raise a federal question pertaining to the claims made in the Securities Class Action based on violations of the Exchange Act.

19.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

20.    This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

21.    Venue is proper in this District because a substantial portion of the transactions and wrongs complained of herein occurred in this District, the Defendants have conducted business in this District, and Defendants' actions have had an effect in this District.

## PARTIES

### Plaintiff

Verified Shareholder Derivative Complaint

22.    Plaintiff is a current shareholder of Skyworks. Plaintiff has continuously held Skyworks common stock since first purchasing the stock on February 22, 2021.

**Nominal Defendant Skyworks**

23.    Skyworks is a Delaware corporation with principal executive offices at 5260 California Avenue, Irvine, California  92617. Skyworks's common stock trades on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "SWKS."

**Defendant Griffin**

24.    Defendant Griffin served as the Company's CEO and as a Company director since May 2016 and as President since May 2014, until he resigned from his positions on February 5, 2025 and transitioned to an advisory role.

25.    The Schedule 14A the Company filed with the SEC on March 28, 2024 (the "2024 Proxy Statement") stated the following about Defendant Griffin:

> Prior to his appointment as Chairman of the Board in May 2021, Mr. Griffin had served as Chief Executive Officer and a director since May 2016 and as President since May 2014. He served as Executive Vice President and Corporate General Manager from November 2012 to May 2014, Executive Vice President and General Manager, High Performance Analog from May 2011 to November 2012, and Senior Vice President, Sales and Marketing from August 2001 to May 2011. Previously, Mr. Griffin was employed by Vectron International, a division of Dover Corp., as Vice President of Worldwide Sales from 1997 to 2001 and as Vice President of North American Sales from 1995 to 1997.

> Qualifications: We believe that Mr. Griffin's qualifications to serve as a director include his strong relationships with Skyworks' key customers, investors, employees, and other stakeholders, as well as his deep understanding of the semiconductor industry and its competitive landscape gained through serving in several different executive positions at Skyworks over the past two decades.

**Defendant Sennesael**

26.    Defendant Sennesael has served as the Company's SVP and CFO since August 2016.

27.    The Company's website states the following about Defendant Sennesael:

**Kris Sennesael**, 56, is senior vice president and chief financial officer of Skyworks Solutions, Inc. He joined the company in August 2016. Prior to joining Skyworks, Mr. Sennesael served as chief financial officer for Enphase Energy, a semiconductor-based energy solutions provider. Earlier, he served as chief financial officer at Standard Microsystems, a designer of mixed signal connectivity solutions, and previously held increasingly responsible financial positions at ON Semiconductor, AMI Semiconductor and Alcatel Microelectronics.

Mr. Sennesael holds bachelor's and master's degrees in economics from the University of Ghent, Belgium, as well as an MBA from the Vlerick Management School. He currently serves on the board of directors of Maxeon Solar Technologies (Nasdaq:MAXN), a designer and manufacturer of solar panels.[3]

### Defendant Batey

28.    Defendant Batey has served as a Company director since 2019. He also serves as a member of the Compensation Committee.

29.    The 2024 Proxy Statement stated the following about Defendant Batey:

Mr. Batey served as Executive Vice President and President of North America for General Motors Company (a publicly traded automotive manufacturer), as well as the Global Brand Chief for Chevrolet, a division of General Motors Company, from 2014 until 2019. His career spans more than 39 years with General Motors where he held various senior management positions in operations, marketing, and sales around the world.

Qualifications: We believe that Mr. Batey's qualifications to serve as a director include his extensive senior management experience at General Motors, where he developed expertise on a broad set of complex strategic, operational, and technological matters involving the automotive industry, an industry that is expected to be a growth market for the Company.

---

[3] https://www.skyworksinc.com/en/Investors/Senior-Management

Verified Shareholder Derivative Complaint

**Defendant Beebe**

30.    Defendant Beebe has served as a Company director since 2004. He also serves as Chair of the Nominating and Governance Committee.

31.    The 2024 Proxy Statement stated the following about Defendant Beebe:

Mr. Beebe has been President and Chief Executive Officer of 2BPartners, LLC (a partnership that provides strategic, financial, and operational advice to private equity investors and management) since 2007. In 2014, Mr. Beebe became a founding partner of Astra Capital Management (a private equity firm based in Washington, D.C.). Previously, beginning in 1998, he was Group President of Operations at ALLTEL Corporation (a telecommunications services company).

Qualifications: We believe that Mr. Beebe's qualifications to serve as a director include his two decades of experience as an operating executive in the wireless telecommunications industry as well as his experience and relationships gained from advising leading private equity firms that are transacting business in the global capital markets.

**Defendant Guerin**

32.    Defendant Guerin has served as a Company director since 2022. He also serves as a member of the Audit Committee.

33.    The 2024 Proxy Statement stated the following about Defendant Guerin:

Mr. Guerin serves as Chief Financial Officer of RB Global (a publicly traded provider of insights, services and transaction solutions for commercial assets and vehicles), a role he has held since January 2024. Previously, Mr. Guerin served as Senior Vice President and Chief Financial Officer of Veritiv Corporation (a formerly publicly traded provider of packaging and hygiene products), from March 2023 to December 2023 and as its Senior Vice President-Finance from January 2023 to March 2023. Prior to that, he served as Executive Vice President and Chief Financial Officer of CDK Global (a formerly publicly traded provider of integrated technology solutions to the automotive industry) from 2021 to 2022. From 2016 to 2021, he served as Division Vice President and sector Chief Financial Officer at Corning Glass Technologies, a division of Corning Inc. (a publicly traded innovator in materials science). Previously, he served in financial leadership roles at Flowserve Corporation, Novartis Corporation, Johnson & Johnson Services

Inc., and AstraZeneca PLC, each a publicly traded company or subsidiary thereof.

Qualifications: We believe that Mr. Guerin's qualifications to serve as a director include his financial and operational expertise, together with his extensive engagements within Asia-Pacific markets.

### Defendant King

34.    Defendant King has served as Chairman of the Board since February 2025 and as a Company director since 2014. She previously served as the Company's Lead Independent Director from 2019 until February 2025. She also serves as Chair of the Compensation Committee and as a member of the Audit Committee.

35.    The 2024 Proxy Statement states the following about Defendant King:

Ms. King has been Lead Independent Director since 2019. She served as Executive Chairman of QLogic Corporation (a publicly traded developer of high-performance server and storage networking connectivity products) from August 2015 until August 2016, when it was acquired by Cavium, Inc. Previously, she served as Chief Executive Officer of Standard Microsystems Corporation (a publicly traded developer of silicon-based integrated circuits utilizing analog and mixed-signal technologies) from 2008 until the company's acquisition in 2012 by Microchip Technology, Inc. Prior to Standard Microsystems, Ms. King was Chief Executive Officer of AMI Semiconductor, Inc., a publicly traded company, from 2001 until it was acquired by ON Semiconductor Corp. in 2008.

Qualifications: We believe that Ms. King's qualifications to serve as a director include her extensive management and operational experience in the high-tech and semiconductor industries as well as her significant strategic and financial expertise.

### Defendant McBride

36.    Defendant McBride has served as a Company director since 2022. She also serves as a member of the Nominating and Corporate Governance Committee.

37.    The 2024 Proxy Statement stated the following about Defendant McBride:

Ms. McBride serves as Chief Operations Officer for Iridium Communications, Inc. (a publicly traded operator of a satellite-based global communications network). Prior to rejoining Iridium in February 2019, where she had previously served from 2007 to 2016 in various leadership roles, Ms. McBride served from June 2016 to January 2019 as Senior Vice President and Chief Operations Officer for OneWeb (a privately held company building a space-based global communications network that filed a voluntary petition for Chapter 11 bankruptcy protection on March 27, 2020). Earlier in her career, she held a series of increasingly senior positions in technology and operations with Motorola Solutions, Inc. (a publicly traded telecommunications company), and General Dynamics Corporation (a publicly traded aerospace and defense company).

Qualifications: We believe that Ms. McBride's qualifications to serve as a director include her extensive strategy and operations expertise developed through twenty-five years of experience within the wireless technology industry.

**Defendant McGlade**

38.    Defendant McGlade has served as a Company director since 2005. He also serves as Chair of the Audit Committee and as a member of the Nominating and Corporate Governance Committee.

39.    The 2024 Proxy Statement stated the following about Defendant McGlade:

Mr. McGlade served as Chairman of the Board of Intelsat S.A. (a publicly traded worldwide provider of satellite communication services) from April 2013 to February 2022. He served as Executive Chairman of Intelsat from April 2015 to March 2018, prior to which he served as Chairman and Chief Executive Officer. Previously, Mr. McGlade served as an Executive Director of mmO2 PLC and as the Chief Executive Officer of O2 UK (a subsidiary of mmO2), a position he held from October 2000 until March 2005.

Qualifications: We believe that Mr. McGlade's qualifications to serve as a director include his significant operational, strategic, and financial acumen, as well as his knowledge about global capital markets, developed over approximately four decades of experience in the telecommunications industry.

**Defendant Schriesheim**

Verified Shareholder Derivative Complaint

40.    Defendant Schriesheim has served as a Company director since 2006. He also serves as a member of the Audit Committee and the Compensation Committee.

41.    The 2024 Proxy Statement stated the following about Defendant Schriescheim:

> Mr. Schriesheim has been Chairman of Truax Partners LLC (a consulting firm) since 2018 and has served as Adjunct Associate Professor of Finance at the University of Chicago Booth School of Business since September 2023. He served as Executive Vice President and Chief Financial Officer of Sears Holdings Corporation (a publicly traded nationwide retailer) from August 2011 to October 2016. From January 2010 to October 2010, Mr. Schriesheim was Chief Financial Officer of Hewitt Associates, Inc. (a global human resources consulting and outsourcing company that was acquired by Aon Corporation). From October 2006 until December 2009, he was the Executive Vice President and Chief Financial Officer of Lawson Software, Inc. (a publicly traded ERP software provider).

> Qualifications: We believe that Mr. Schriesheim's qualifications to serve as a director include his extensive knowledge of the capital markets and corporate financial capital structures, his expertise evaluating and structuring merger and acquisition transactions within the technology sector, and his experience gained through leading companies through major strategic and financial corporate transformations.

### Defendant Turcke

42.    Defendant Turcke has served as a Company director since 2023. She also serves as a member of the Nominating and Corporate Governance Committee.

43.    The 2024 Proxy Statement stated the following about Defendant Turcke:

> Ms. Turcke most recently served as a senior advisor at Brookfield Asset Management from September 2020 to September 2022. Previously, Ms. Turcke served as Chief Operating Officer of the National Football League (NFL) from January 2018 to September 2020 and as a Senior Advisor for the NFL from September 2020 to May 2021. She joined the league as President of NFL Network, Digital Media, NFL Films and IT in April 2017. Prior to the NFL, Ms. Turcke served for more than a decade in various leadership roles within BCE Inc. (a publicly traded communications company formerly known as Bell Canada Enterprises), including serving from April 2015 to February 2017 as president of Bell Media, a division of BCE.

Qualifications: We believe that Ms. Turcke's qualifications to serve as a director include her significant operational, management and financial experience, including in the telecommunications industry.

### **FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS**

44.    By reason of their positions as officers, directors, and/or fiduciaries of Skyworks and because of their ability to control the business and corporate affairs of Skyworks, the Individual Defendants owed Skyworks and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Skyworks in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Skyworks and its shareholders so as to benefit all shareholders equally.

45.    Each director and officer of the Company owes to Skyworks and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligations of fair dealing.

46.    The Individual Defendants, because of their positions of control and authority as directors and/or officers of Skyworks, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

47.    To discharge their duties, the officers and directors of Skyworks were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

48.    Each Individual Defendant, by virtue of their position as a director and/or officer, owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of

Skyworks, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and directors of the Company has been ratified by the remaining Individual Defendants who collectively comprised the Company's Board at all relevant times.

49.    As senior executive officers and/or directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NASDAQ, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, including the dissemination of false information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful and accurate information. Further, they had a duty to ensure the Company remained in compliance with all applicable laws.

50.    To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of Skyworks were required to, among other things:

(a)    ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware, California, and the United States, and pursuant to Skyworks's corporate governance and applicable codes of conduct and/or ethics;

(b)    conduct the affairs of the Company in an efficient, business-like manner

so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     remain informed as to how Skyworks conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d)     establish and maintain systematic and accurate records and reports of the business and internal affairs of Skyworks and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)     maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Skyworks's operations would comply with all applicable laws and Skyworks's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f)     exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g)     refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h)     examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

51.     Each of the Individual Defendants further owed to Skyworks and the shareholders the duty of loyalty requiring that each favor Skyworks's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain

from using their position, influence or knowledge of the affairs of the Company to gain personal advantage.

52.    At all times relevant hereto, the Individual Defendants were the agents of each other and of Skyworks and were at all times acting within the course and scope of such agency.

53.    Because of their advisory, executive, managerial, directorial, and controlling positions with Skyworks, each of the Individual Defendants had access to adverse, nonpublic information about the Company.

54.    The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Skyworks.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

55.    In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

56.    The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to: (i) facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, waste of corporate assets, gross mismanagement, abuse of control, and violations of the Exchange Act; (ii) conceal adverse information concerning the Company's operations, financial condition, legal compliance, future business prospects, and internal controls; and (iii) artificially inflate the Company's stock price.

57.    The Individual Defendants accomplished their conspiracy, common

enterprise, and/or common course of conduct by causing the Company purposefully or recklessly to conceal material facts, fail to correct such misrepresentations, and violate applicable laws. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants who is a director of Skyworks was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

58.    Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted in the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

59.    At all relevant times hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Skyworks and was at all times acting within the course and scope of such agency.

## SKYWORKS'S CODE OF CONDUCT

60.    Skyworks's Code of Business Conduct and Ethics (the "Code of Conduct") states that the Company "seeks to foster and maintain a culture of compliance with applicable laws, rules, and regulations, and the highest standards of ethics and business conduct." The Code of Conduct also states that it "outlines broad principles of ethical business conduct embraced by Skyworks."

61.    In the section "Conflicts of Interest," the Code of Conduct states the following, in relevant part:

You might choose to participate in legitimate financial, business, or other activities outside the scope of your job. Those activities must be free of any actual or apparent conflict with your responsibilities to Skyworks. A conflict of interest may occur when a personal activity interferes with the interests of Skyworks or makes it difficult for you to act in the best interest of Skyworks. A conflict of interest may also arise when you personally receive, or when you give or offer to give to others, benefits that are improper given your role in Skyworks. You should avoid any relationship that would cause an actual or apparent conflict of interest with your duties and responsibilities to Skyworks. In addition, you must disclose to Skyworks any circumstance that you believe might raise doubt regarding your ability to act objectively and in Skyworks' best interest.

62.    In the section "Compliance with All Laws, Rules, and Regulations," the Code of Conduct states:

Skyworks is subject to laws, rules and regulations, both in the U.S. and abroad, the violation of which could subject Skyworks to significant risk. Obeying the law, both in letter and in spirit, is the foundation on which Skyworks' ethical standards are built. This includes, without limitation, laws covering: • commercial bribery, kickbacks and corruption; • copyrights, trademarks and trade secrets; • information privacy; • insider trading; • illegal political contributions; • antitrust, collusion, and other anticompetitive practices; • foreign corrupt practices; • environmental hazards; • document retention and destruction; • financial reporting; • employment discrimination or harassment; • occupational health and safety; or • misuse of corporate assets. You are expected to understand and comply with all laws, rules, and regulations applicable to Skyworks and to you as an employee. If any doubt exists about whether a course of action is lawful and appropriate, you should seek advice immediately from your supervisor or a member of Skyworks' legal department. To help you be more informed — and continuously mindful — of the laws governing your conduct, Skyworks maintains separate, detailed policies regarding matters such as insider trading and non-disclosure of material non-public information; electronic resources, privacy, and data protection; travel; social media and external communications; timekeeping; positive work environment; and a workplace free from violence, drugs, alcohol, harassment, and discrimination. You are expected to review and comply with these policies and the other policies posted on Skyworks' intranet site, Skylink.

63.    In the section "Full, Fair, Accurate, Timely, and Understandable Disclosures," the Code of Conduct states the following, in relevant part:

> In order to ensure that all business records and financial reports are accurate, complete, understandable, and contain no omissions or false or misleading information, Skyworks maintains internal controls and procedures designed to provide reasonable assurance of: • reliability of financial reporting in compliance with generally accepted accounting principles in the U.S.; and • compliance with all applicable laws and regulations. Skyworks' filings with, and submissions to, the SEC must be complete, fair, accurate, timely, and understandable. Employees who provide information for such filings and reports must take this responsibility seriously and provide prompt and truthful answers to inquiries along these lines.

64.    The Company addresses its "Policy Against Retaliation" within the Code of Conduct, stating:

> Skyworks will not retaliate against, nor will it tolerate any retaliation against, anyone who reports suspected violations of this Code or applicable laws, rules, or regulations or who participates in investigations concerning the same. This means Skyworks prohibits you from retaliating or taking adverse action of any kind against anyone for raising or helping to resolve a conduct concern in good faith. If you engage in such retaliation, you will be subject to discipline, up to and including termination.

65.    In the section "Penalties for Violations," the Code of Conduct states the following:

> Skyworks is committed to taking prompt action in response to violations of this Code. If you violate this Code, you are subject to disciplinary action up to and including termination. The following are examples of conduct that may result in discipline: • retaliation against any person within Skyworks for reporting a conduct concern in good faith; • any action that violates this Code or any applicable law, rule, or regulation; • requesting others to violate this Code or any applicable law, rule, or regulation; • failure to promptly raise a known or suspected violation of this Code, or any applicable law, rule, or regulation; or • failure to cooperate in internal investigations of possible violations of this Code, or any applicable law, rule, or regulation.
>
> The list of examples above is not an exhaustive list of conduct that may violate the Code; rather, it is merely illustrative. Skyworks, at its sole discretion, will

evaluate suspected violations on a case-by-case basis.

66.    In the section "Exceptions to the Code," the Code of Conduct states:

Exceptions to this Code may only be granted on a case-by-case basis and only
in extraordinary circumstances. Exceptions for employees may be made only
by an executive officer of Skyworks. Any exception for members of
Skyworks' Board of Directors and its executive officers may be made only by
Skyworks' Board of Directors and will be promptly disclosed to the public.

67.    In violation of the Code of Conduct, the Individual Defendants conducted
little, if any, oversight of the Individual Defendants' scheme to issue materially false and
misleading statements to the public and to facilitate and disguise the Individual
Defendants' violations of law, including but not limited to breaches of fiduciary duty,
unjust enrichment, abuse of control, gross mismanagement, waste of corporate assets, and
violations of the Exchange Act. Also, in violation of the Code of Conduct, the Individual
Defendants failed to maintain the accuracy of Skyworks's records and reports, failed to
maintain internal controls, and failed to comply with laws and regulations, conduct
business in an honest and ethical manner, and properly report violations of the Code of
Conduct.

## SKYWORKS'S AUDIT COMMITTEE CHARTER

68.    Skyworks also maintains an Audit Committee Charter which governs the
Audit Committee's roles and responsibilities. The Audit Committee Charter states the
following under "Purpose and Scope":

The primary functions of the Audit Committee (the "Committee") of the
Board of Directors (the "Board") are to oversee (i) the audit of the financial
statements of Skyworks Solutions, Inc. (the "Corporation") provided to the
Securities and Exchange Commission (the "SEC"), the Corporation's
shareholders and the general public, (ii) the Corporation's internal financial
and accounting processes, and (iii) the independent audit process.

69.    With respect to the Audit Committee's responsibilities as they relate to
"Document Review," the Audit Committee Charter states the following, in relevant part:

Verified Shareholder Derivative Complaint

1. Review and assess the adequacy of this Charter as conditions dictate, but at least annually, and recommend any proposed changes to this Charter to the Board for approval. 2. Review with representatives of management and representatives of the independent accounting firm the Corporation's audited annual financial statements prior to their filing as part of the Corporation's annual report on Form 10-K. After such review and discussion, the Committee shall recommend to the Board whether such audited financial statements should be included in the Corporation's annual report on Form 10-K. The Committee shall also review with representatives of management and representatives of the independent accounting firm the Corporation's interim financial statements prior to their inclusion in the Corporation's quarterly reports on Form 10-Q. 3. Review with management and the independent accounting firm significant financial reporting issues and judgments made in connection with the preparation of the Corporation's financial statements, including: (i) any significant changes in the Corporation's selection or application of accounting principles; (ii) any significant issues or changes regarding accounting and auditing principles or practices; (iii) any significant issues regarding the adequacy of the Corporation's internal controls; (iv) the development, selection and disclosure of critical accounting estimates; and (v) analyses of the effect of alternative assumptions, estimates or generally accepted accounting principles ("GAAP") methods on the Corporation's financial statements. 4. Discuss with management and the independent accounting firm the effect of regulatory and accounting initiatives as well as off-balance sheet structures on the Corporation's financial statements. 5. Discuss with management the quarterly earnings press releases, including "pro forma" and other "adjusted" non-GAAP information, as well as financial information and earnings guidance provided to analysts, rating agencies and others. 6. Meet periodically to review with management and the independent accounting firm their views on the Corporation's major financial risk exposures, including the Corporation's risk assessment and risk management policies, and the steps management has taken to monitor and control such exposures.

70.    With respect to the Audit Committee's responsibilities as they relate to "Compliance and Reporting," the Audit Committee Charter states the following, in relevant part:

1. Engage independent counsel, accounting consultants or other advisors to advise the Committee in connection with any matter within its duties and responsibilities. The Committee is empowered, without further action by the Board, to cause the Corporation to pay the compensation of such advisors as

established by the Committee. 2. Monitor compliance by the employees of the Corporation and any subsidiaries and controlled affiliated entities with applicable legal requirements and the Corporation's standards of business conduct policies. 3. Review with the Corporation's General Counsel legal matters that may materially affect the financial statements, the Corporation's compliance policies and any material reports or inquiries received from regulators or governmental agencies. 4. Review annually, in consultation with the independent accounting firm and management, the adequacy of the Corporation's internal financial and accounting processes. 5. Prepare and submit, in accordance with the rules of the SEC as modified or supplemented from time to time, a written report of the Committee to be included in the Corporation's annual proxy statement for each annual meeting of the Corporation's stockholders. 6. Review and approve all related-party transactions of the Corporation required to be disclosed pursuant to Item 404 of Regulation S-K.

71.    With respect to the Audit Committee's other responsibilities, the Audit Committee Charter states the following, in relevant part:

1. Meet at least quarterly with the Corporation's senior executive officers and the independent accounting firm in separate executive sessions. 2. Review any other matter brought to its attention within the scope of its duties, including any issue of significant financial misconduct. 3. Establish procedures for (i) the receipt, review, retention and treatment of complaints regarding accounting, internal accounting controls or auditing matters, as well as potential or suspected violations of the Corporation's Code of Business Conduct and Ethics; and (ii) the confidential or anonymous submission by employees of the Corporation of concerns regarding questionable accounting or auditing matters, and the receipt and review thereof. 4. Review with the Corporation's Chief Executive Officer and Chief Financial Officer, prior to their quarterly or annual report certification submission to the SEC, (i) all significant deficiencies in the design or operation of internal controls that could adversely affect the Corporation's ability to record, process, summarize and report financial data, and any material weaknesses in the Corporation's internal controls that they have identified for the Corporation's independent accounting firm; (ii) any fraud, whether or not material, that involves management or other employees who have a significant role in the Corporation's internal controls; and (iii) whether or not there were significant changes in internal controls or in other factors that could significantly affect internal controls subsequent to the date of the Chief Executive Officer's and the Chief Financial Officer's evaluation thereof, including any corrective

actions with regard to significant deficiencies and material weaknesses. 5. Review and approve the Corporation's entry into swaps, including transactions in swaps that are subject to mandatory clearing, and to approve use of the end-user exception from clearing. 6. In consultation with the Corporation's management, periodically review the adequacy of the Corporation's disclosure controls and procedures. 7. Oversee the steps management has taken to monitor and control the Company's cybersecurity risk exposure. 8. Make regular reports to the Board. 9. Cause the Corporation to pay, without further action by the Board, the ordinary administrative expenses of the Committee that are necessary or appropriate in carrying out its duties. 10. The Committee may take such other actions regarding the Corporation's financial reporting obligations that are in the best interests of the Corporation as the Committee shall deem appropriate or as shall otherwise be required by The Nasdaq Global Select Market or any other applicable laws.

72.    In violation of the Audit Committee Charter, the Individual Defendants conducted little, if any, oversight of the Company's engagement in the Individual Defendants' scheme to issue materially false and misleading statements to the public and to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, gross mismanagement, abuse of control, waste of corporate assets, and violations of the Exchange Act. Moreover, in violation of the Audit Committee Charter, the Individual Defendants failed to maintain the accuracy of the Company's records and reports, comply with laws and regulations, act in good faith and diligence without misstating, misrepresenting, or omitting material facts, and properly report violations of the Audit Committee Charter.

## INDIVIDUAL DEFENDANTS' MISCONDUCT

### Background

73.    Skyworks is a Delaware-incorporated company headquartered in Irvine, California that purports to be "a leading developer, manufacturer and provider of analog and mixed-signal semiconductor products and solutions for numerous applications, including aerospace, automotive, broadband, cellular infrastructure, connected home,

defense, entertainment and gaming, industrial, medical, smartphone, tablet, and wearables."[4]

**False and Misleading Statements**

*July 30, 2024 Press Release and Earnings Call*

74.    The Relevant Period began on July 30, 2024 when the Company published a press release announcing its financial results for the third quarter of 2024 ("3Q24"). Among other things, the press release quoted Defendant Griffin, who stated the following, in relevant part:

> Skyworks generated solid results and strong profitability consistent with our guidance. Exiting the June quarter, our mobile business is ramping up while our broad markets business continues to recover. Over the medium-to-long-term, we expect generative AI applications will migrate to the edge, including the smartphone, driving a meaningful replacement cycle and leading to higher levels of RF complexity.

75.    The press release also quoted Defendant Sennesael, who stated the following, in relevant part, regarding the Company's anticipated future revenue:

> For the September quarter, we expect revenue to be $1.00 billion to $1.04 billion with non-GAAP diluted earnings per share of $1.52 at the mid-point of the revenue range. We expect our mobile business to be up approximately 20% sequentially, as demand and supply patterns appear to be normalizing. In broad markets, we expect modest improvement, representing three consecutive quarters of sequential growth. In addition, given our solid capital structure and strong year-to-date cash flow generation, we are announcing another increase to our quarterly dividend.

76.    Later that day, the Company hosted an earnings call with analysts and investors to discuss its 3Q24 results. During the call, in response to an analyst question about the Company's future guidance, Defendant Sennesael stated the following, in relevant part:

---

[4] https://www.sec.gov/ix?doc=/Archives/edgar/data/0000004127/000000412724000131/swks-20240927.htm

<Q: Timothy Michael Arcuri - *UBS Investment Bank – Analyst*> And then can you give us a sense also of what December -- I mean, December is kind of all over the map seasonally, but it's up in the range of 10% usually. Is that a reasonable bogey to think about for December?

<A: Kris Sennesael - *Senior VP & CFO*> Yes. So we only guide 1 quarter at a time, and I would really stick with that. But yes***, it's clear that we do expect further sequential growth going into the December quarter, but we will guide next quarter on that.***

***November 12, 2024 Press Release and Earnings Call***

77.    On November 12, 2024, the Company reported its financial results for the fourth quarter of 2024 ("4Q24"). In relevant part, Defendant Griffin stated the following:

Skyworks' fourth fiscal quarter revenue grew 13% sequentially, above the midpoint of our guidance. For the second year in a row, we generated over $1.6 billion of free cash flow and ended fiscal 2024 with a record 40% free cash flow margin. ***Looking ahead, we believe AI is poised to ignite a transformative smartphone upgrade cycle, propelling the demand for higher levels of RF complexity. We are in the early stages of this multi-year trend and Skyworks is well-positioned to capitalize on it.***

78.    The same day, the Company hosted an earnings call with analysts and investors to discuss the 4Q24 results. During the call, Defendant Sennesael stated the following, in relevant part:

Skyworks revenue for the fourth fiscal quarter of 2024 was $1.025 billion, slightly above the midpoint of our outlook. Mobile was approximately 65% of total revenue up 21% sequentially as we successfully supported the ramp of new products at our mobile customers. Broad markets were approximately 35% of total revenue, up $1 million sequentially. Gross profit was $476 million with gross margin at 46.5%, in line with expectations. Gross margin grew 50 basis points sequentially, reflecting our ongoing cost reduction actions.

Also, during Q4, we further reduced our internal inventory, resulting in 7 consecutive quarters of reductions. Operating expenses were $203 million, reflecting our strategic investments in our technology and product road maps. We delivered $273 million of operating income, translating into an operating margin of 27%. We incurred $2 million of other expenses, and our effective

tax rate was 8%, driving net income of $250 million and diluted earnings per
share of $1.55, which is $0.03 above our guidance.

During the fourth fiscal quarter, we delivered impressive cash generation,
with cash flow from operations at $476 million, capital expenditures at $83
million, resulting in a free cash flow of $393 million or 38% free cash flow
margin. For fiscal 2024, we generated well over $1.6 billion of free cash flow,
our second year in a row and ended the year with a record 40% free cash flow
margin, translating into approximately $10.40 of free cash flow per share and
a free cash flow yield of approximately 11.5%. We continue to drive robust
cash flow through steady levels of profitability, prudent working capital
management and moderating CapEx intensity.

During fiscal Q4, we paid $112 million in dividends. Cash and investments
grew to approximately $1.6 billion, and we have $1 billion in debt, providing
us with excellent optionality. Now let's move on to our outlook for Q1 of fiscal
2025. We anticipate revenue of $1.050 billion to $1.080 billion, up 4%
sequentially at the midpoint.

***We expect our mobile business to be up mid-single digits sequentially,
driven by seasonal product ramps. In broad markets, we anticipate further
modest sequential growth. And a return to year-over-year growth. The pace
of the recovery is more measured than we anticipated, given excess
inventory in select segments like industrial, automotive, infrastructure and
networking.***

***Gross margin is projected to be 46% to 47%, and we expect operating
expenses in the range of $209 million to $215 million, with sequential
increases reflecting typical adjustments made at the start of a new fiscal
year, including variable compensation accruals. In addition, we are
leveraging our strong cash flow generation to invest in technology and
product road maps to drive share and increase diversification.***

***Below the line, we anticipate $3 million in other income an effective tax rate
of 12.5% and a diluted share count of approximately 160 million shares.
Accordingly, at the midpoint of the revenue range of $1.065 billion we
intend to deliver diluted earnings per share of $1.57.***

79.    The statements in ¶¶74-78 above were materially false and misleading and
failed to disclose, *inter alia*, that: (1) Defendants did not have reliable information with

respect to Skyworks's projected revenue outlook and anticipated growth; (2) Defendants had minimized the risks facing the Company with respect to macroeconomic fluctuations and smartphone upgrade cycles; and (3) the Company's long-standing relationship with its largest customer, Apple, did not ensure that Apple would continue its business relationship with the Company for its anticipated iPhone launch. As a result of the foregoing, the Company's statements about its business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH EMERGES

80.    The truth fully emerged on February 5, 2025 when, after the market closed, Skyworks published a press release announcing its financial results for the first quarter of 2025 ("1Q25"), which contained the Company's guidance for the second quarter of 2025 ("2Q25"). With respect to the Company's results, Defendant Sennesael stated the following, in relevant part:

> For the March quarter, we expect revenue between $935 million to $965 million, with non-GAAP diluted earnings per share of $1.20 at the mid-point of the revenue range. We anticipate a mid-to-high teens sequential decline in mobile, consistent with historical seasonal patterns. In broad markets, we expect additional sequential and year-over-year growth.

> In addition, our board of directors has approved a new $2 billion stock repurchase program as part of our disciplined capital allocation strategy.

81.    The same day, the Company hosted an earnings call with analysts and investors to discuss Skyworks's financial results for 1Q25 and guidance for 2Q25. During the call, Defendant Sennesael stated the following, in relevant part:

> For the first quarter of fiscal 2025, we demonstrated robust cash generation, with operating cash flow of $377 million, capital expenditures of $39 million and a free cash flow of $338 million representing a 32% free cash flow margin. During fiscal Q1, we distributed $112 million in dividends. Our cash and investment balance increased to approximately $1.75 billion, while we maintain a debt level of $1 billion, providing us with ample financial flexibility.

*Now let's move on to our outlook for Q2 of fiscal 2025. We anticipate revenue of $935 million to $965 million. We expect our mobile business to decline mid- to high teens sequentially, in line with historical seasonality. In broad markets, we anticipate additional sequential growth and a further improvement in year-over-year growth.* We are seeing positive momentum in booking trends, backlog and sell-through patterns across broad markets. However, inventory headwinds remain acute in industrial and infrastructure.

Gross margin is projected between 45.5% and 46%, which is seasonally adjusted for lower sales volume. We anticipate operating expenses in the range of $220 million to $228 million, utilizing our robust cash flow generation to invest in technology and product road maps.

* * *

Before moving into Q&A, I want to briefly reflect on our business and address our strategic partnership with our largest customer. Over the past 25 years, we have built a strong technology company, a leader in RF connectivity for mobile solutions and expanded those RF capabilities with analog and mixed signal expertise in our growing broad markets business. And over the last 18 years, we have benefited from a truly collaborative partnership with our largest customer, who has constantly pushed us to develop innovative high-performance and highly integrated RF solutions.

*We have partnered with that customer since the launch of their first phone, which has resulted in significant content and revenue growth over the years. However, the last couple of years have been challenging as the competitive landscape has intensified. As it relates to the upcoming phone cycle expected to be launched in the fall of 2025, the Skyworks team developed a suite of high-performance RF solutions. Despite our rich product offering, we did not get the result that we targeted. Although we were able to secure multiple sockets including several highly integrated RF modules, our content position is expected to be down 20% to 25%. This decline will start impacting our revenue in the fourth quarter of fiscal '25 and throughout fiscal '26. While we are disappointed with this outcome, we remain steadfast in our commitment to invest and innovate around our technology road maps.*

We have already started the development of a new suite of solutions for the next generation phone with an expanding set of products and addressing more opportunities than ever before. In addition, we will continue to pursue growth opportunities with our other mobile customers, although on a selective basis, focusing on those segments of the market that demand high-performance RF.

And we will continue to drive our diversification strategy, supported by multiple secular growth trends in broad markets. We expect those opportunities to partially offset the revenue decline at a large customer in fiscal '26 and position us for growth in fiscal '27.

82.    On this news, the price per share of the Company's common stock fell $21.48, or over 24%, from a closing price of $87.08 per share on February 5, 2025 to close at $65.60 per share on February 6, 2025.

83.    Analysts also responded negatively to these disclosures, with Wells Fargo analysts reporting that the Company's "greatest risk partially came to fruition as the company expects a material 20%-25% reduction in radio frequency chip content per Apple iPhone within the iPhone 17 series arriving later this year." Morningstar also reported the following about Skyworks, in relevant part:

We observed Skyworks' stock sell off as much as 24% on the news, and we think the reaction is justified. We will now model about $7 of RF content in the iPhone 17 for Skyworks in fiscal 2026 and beyond, down from $10-$11 of content earned in prior years and in our prior model. As such, we cut our fair value estimate to $70 per share from $95.

* * *

We assign Skyworks a Morningstar Uncertainty Rating of High, considering the cyclical nature of the semiconductor industry and the company's highly concentrated customer base. In our view, Skyworks' greatest risk revolves around customer concentration with Apple, which made up 69% of revenue in fiscal 2024. Although unlikely, it would be a damaging blow to Skyworks if it were to entirely lose its business with Apple. However, Skyworks will face share loss in fiscal 2026 as the company believes it lost 20%-25% of its content within the iPhone 17 series.

Nonetheless, Skyworks will also have to fend off intense competition within wireless, from radio frequency specialists like Qorvo and Broadcom as well as broad wireless leaders like Qualcomm. Even if Skyworks were to retain its share of design wins, Apple, Samsung, and others could wield significant pricing power that could make these design wins less lucrative in the long run. Design wins with other smartphone makers could be less profitable as well, particularly in low-end 4G- and 5G-enabled smartphones. Finally, although Skyworks has done well to diversify a portion of its business into non-handset

opportunities, the firm squares off against a host of well-capitalized firms in the analog chip space with decades of design experience.

## <u>REPURCHASES DURING THE RELEVANT PERIOD</u>

84.     During the Relevant Period, the Individual Defendants caused the Company to initiate repurchases of its common stock that substantially damaged the Company. In total, the Company spent an aggregate amount of over $39.4 million to repurchase approximately 439,379 shares of its own common stock at artificially inflated prices from July 2024 through November 2024.

85.     According to the Form 10-K the Company filed with the SEC on November 15, 2024 for 2023 (the "2023 10-K"), between July 27, 2024 and August 23, 2024, the Company repurchased 10,615 shares of its own common stock at an average price per share of approximately $108.30, for a total cost to the Company of approximately $1.1 million.[5]

86.     As the Company's stock was actually worth only $65.60 per share, the price at which it was trading when markets closed on February 6, 2025, the Company overpaid by approximately $696,344 for repurchases of its own stock between July 27, 2024 and August 23, 2024.

87.     According to the 2023 10-K, between August 24, 2024 and September 27, 2024, the Company repurchased 395 shares of its own common stock at an average price per share of approximately $107.70, for a total cost to the Company of approximately $42,542.

88.     As the Company's stock was actually worth only $65.60 per share, the price at which it was trading when markets closed on February 6, 2025, the Company overpaid by approximately $25,912 for repurchases of its own stock between August 24, 2024 and September 27, 2024.

89.     According to the Form 10-Q the Company filed with the SEC on February 5, 2025, between October 26, 2024 and November 22, 2024, the Company repurchased

---

[5] Upon information and belief, these repurchases were made during the Relevant Period.

Verified Shareholder Derivative Complaint

428,369 shares of its own common stock at an average price per share of approximately $89.42, for a total cost to the Company of approximately $38.3 million.

90.    As the Company's stock was actually worth only $65.60 per share, the price at which it was trading when markets closed on February 6, 2025, the Company overpaid by approximately $28.1 million for repurchases of its own stock between October 26, 2024 and November 22, 2024.

91.    Thus, in total, during the Relevant Period, the Company overpaid for repurchases of its own stock by over $28.8 million.

## DAMAGES TO SKYWORKS

92.    As a direct and proximate result of the Individual Defendants' conduct, Skyworks has lost and will continue to lose and expend many millions of dollars.

93.    Such expenditures include, but are not limited to, legal fees, costs, and any payments for resolution of or to satisfy judgments associated with the Securities Class Action, and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

94.    Such expenditures also include, but are not limited to, fees, costs, and any payments for resolution of or to satisfy judgments associated with any other lawsuits filed against the Company or the Individual Defendants based on the misconduct alleged herein, and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

95.    Such expenditures will also include costs incurred in any internal investigations pertaining to violations of law, costs incurred in defending any investigations or legal actions taken against the Company due to its violations of law, and payments of any fines or settlement amounts associated with the Company's violations.

96.    Such losses include the Company's overpayment of over $28.8 million for repurchases of its own stock during the period when the Company's stock price was artificially inflated due to the false and misleading statements discussed herein.

97.    Additionally, these expenditures include, but are not limited to, unjust

compensation, benefits, and other payments provided to the Individual Defendants who breached their fiduciary duties to the Company.

98.   As a direct and proximate result of the Individual Defendants' conduct, Skyworks has also suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Company's and their misrepresentations.

## DERIVATIVE ALLEGATIONS

99.   Plaintiff brings this action derivatively and for the benefit of Skyworks to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of Skyworks, unjust enrichment, abuse of control, gross mismanagement, waste of corporate assets, and violations of Sections 10(b) and 20(a) of the Exchange Act.

100.   Skyworks is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

101.   Plaintiff is, and has been at all relevant times, a shareholder of Skyworks. Plaintiff will adequately and fairly represent the interests of Skyworks in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

## DEMAND FUTILITY ALLEGATIONS

102.   Plaintiff incorporates by reference and realleges each and every allegation stated above as if fully set forth herein.

103.   A pre-suit demand on the Board is futile and, therefore, excused. When this action was filed, Skyworks's Board consisted of the following nine individuals: Defendants King, Batey, Beebe, Guerin, McBride, McGlade, Schriesheim, and Turcke (the "Director-Defendants") and non-party Philip Brace (together with the Director-Defendants, the "Directors"). Plaintiff needs only to allege demand futility as to five of the nine Directors that were on the Board at the time this action was filed.

104.   Demand is excused as to all of the Director-Defendants because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of the scheme they engaged in knowingly or recklessly to make and/or cause the Company to make false and misleading statements and omissions of material fact, and, at the same time, to cause the Company to overpay by over $28.8 million for repurchases of its own stock while the stock price was artificially inflated due to the false and misleading representations discussed herein, all of which renders the Director-Defendants unable to impartially investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the scheme.

105.   In complete abdication of their fiduciary duties, the Director-Defendants either knowingly or recklessly caused or permitted Skyworks to issue materially false and misleading statements. Specifically, the Director-Defendants caused Skyworks to issue false and misleading statements which were intended to make Skyworks appear more profitable and attractive to investors. Moreover, the Director-Defendants caused the Company to fail to maintain internal controls. As a result of the foregoing, the Director-Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

106.   Additional reasons that demand on Defendant King is futile follow. Defendant King has served as Chairman of the Board since February 2025 and as a Company director since 2014. She previously served as the Company's Lead Independent Director from 2019 until February 2025. She also serves as Chair of the Compensation Committee and as a member of the Audit Committee. Defendant King has received and continues to receive handsome compensation for her role as a director. As a trusted Company director, she conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded her duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded her duties to protect corporate assets. For these reasons, Defendant King breached her fiduciary duties, faces a

substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

107.    Additional reasons that demand on Defendant Batey is futile follow. Defendant Batey has served as a Company director since 2019. He also serves as a member of the Compensation Committee. Defendant Batey has received and continues to receive handsome compensation for his role as a director, As a trusted Company director, he conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. For these reasons, Defendant Batey breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

108.    Additional reasons that demand on Defendant Beebe is futile follow. Defendant Beebe has served as a Company director since 2004. He also serves as Chair of the Nominating and Governance Committee. Defendant Beebe has received and continues to receive handsome compensation for his role as a director. As a trusted Company director, he conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. For these reasons, Defendant Beebe breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

109.    Additional reasons that demand on Defendant Guerin is futile follow. Defendant Guerin has served as a Company director since 2022. He also serves as a member of the Audit Committee. Defendant Guerin has received and continues to receive handsome compensation for his role as a director. As a trusted Company director, he conducted little, if any, oversight of the scheme to cause the Company to make false and

Verified Shareholder Derivative Complaint

misleading statements, consciously disregarded his duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. For these reasons, Defendant Guerin breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

110.    Additional reasons that demand on Defendant McBride is futile follow. Defendant McBride has served as a Company director since 2022. She also serves as a member of the Nominating and Corporate Governance Committee. Defendant McBride has received and continues to receive handsome compensation for her role as a director. As a trusted Company director, she conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded her duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded her duties to protect corporate assets. For these reasons, Defendant McBride breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

111.    Additional reasons that demand on Defendant McGlade is futile follow. Defendant McGlade has served as a Company director since 2005. He also serves as Chair of the Audit Committee and as a member of the Nominating and Corporate Governance Committee. Defendant McGlade has received and continues to receive handsome compensation for his role as a director. As a trusted Company director, he conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. For these reasons, Defendant McGlade breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

112.    Additional reasons that demand on Defendant Schriesheim is futile follow.

Defendant Schriesheim has served as a Company director since 2006. He also serves as a member of the Audit Committee and the Compensation Committee. Defendant Schriesheim has received and continues to receive handsome compensation for his role as a director. As a trusted Company director, he conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. For these reasons, Defendant Schriesheim breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

113.   Additional reasons that demand on Defendant Turcke is futile follow. Defendant Turcke has served as a Company director since 2023. She also serves as a member of the Nominating and Corporate Governance Committee. Defendant Turcke has received and continues to receive handsome compensation for her role as a director. As a trusted Company director, she conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded her duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded her duties to protect corporate assets. For these reasons, Defendant Turcke breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

114.   Additional reasons that demand on non-party Philip Brace ("Brace") is futile follow. Brace has served as the Company's President and CEO and as a Company director since February 17, 2025. The Company provides Brace with his principal occupation for which he receives handsome compensation. He is beholden to the other members of the Board that enable that compensation, including the Director-Defendants, who are all primary wrongdoers. In addition, since his appointment as President, CEO, and as a Company director, Brace, as the Company's highest officer, has failed to take action to

redress the harm to the Company caused by the Individual Defendants named herein. Further, Brace is unlikely to take action that would risk his primary source of livelihood. Moreover, as the Company admits, he is a non-independent director. For these reasons, Brace is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

115.    Additional reasons that demand on the Board is futile follow.

116.    Defendants McGlade, Guerin, King, and Schriesheim (collectively, the "Audit Committee Defendants") served as members of the Audit Committee at all relevant times. As such, they were responsible for the effectiveness of the Company's internal controls, the truth and accuracy of the Company's financial statements, and the Company's compliance with applicable laws and regulations. During the Relevant Period, they violated the Audit Committee Charter by engaging in or permitting the Company to engage in the dissemination of materially false and misleading statements to the public and to facilitate the Individual Defendants' violations of law, including breaches of fiduciary duty and violations of the Exchange Act; failed to adequately exercise their risk management and risk assessment functions; and failed to ensure adequate Board oversight of the Company's internal control over financial reporting, disclosure controls and procedures, and the Code of Conduct. Thus, the Audit Committee Defendants breached their fiduciary duties, are not independent or disinterested, and thus demand is excused as to them.

117.    In violation of the Code of Conduct, the Director-Defendants conducted little, if any, oversight of the Company's engagement in the Individual Defendants' scheme to issue materially false and misleading statements to the public and to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, abuse of control, gross mismanagement, waste of corporate assets, and violations of the Exchange Act. In further violation of the Code of Conduct, the Director-Defendants failed to comply with laws and regulations, maintain the accuracy of Company records and reports, avoid conflicts of interest, conduct business in an honest and ethical

manner, and properly report violations of the Code of Conduct. Thus, the Director-Defendants face a substantial likelihood of liability, and demand is futile as to them.

118.   Skyworks has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Director-Defendants have not filed any lawsuits against themselves or any others who were responsible for that wrongful conduct to attempt to recover for Skyworks any part of the damages Skyworks suffered and will continue to suffer thereby. Thus, any demand upon the Director-Defendants would be futile.

119.   The Director-Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Director-Defendants can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As a majority of the Director-Defendants face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

120.   The acts complained of herein constitute violations of fiduciary duties owed by Skyworks's officers and directors, and these acts are incapable of ratification.

121.   The Director-Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, i.e., monies belonging to the stockholders of Skyworks. If there is a directors' and officers' liability insurance policy covering the Director-Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Director-Defendants, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Director-Defendants were to sue

themselves or certain of the officers of Skyworks, there would be no directors' and officers' insurance protection. Accordingly, the Director-Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director-Defendants is futile and, therefore, excused.

122.   If there is no directors' and officers' liability insurance, then the Director-Defendants will not cause Skyworks to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event, as well.

123.   Thus, for all of the reasons set forth above, all of the Director-Defendants, and, if not all of them, at least five of the Directors, cannot consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

## FIRST CLAIM
### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

124.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

125.   The Individual Defendants, by virtue of their positions with Skyworks and their specific acts, were, at the time of the wrongs alleged herein, controlling persons of Skyworks and each of its officers and directors who made the false and misleading statements alleged herein within the meaning of § 20(a) of the Exchange Act. The Individual Defendants had the power and influence and exercised the same to cause Skyworks to engage in the illegal conduct and practices complained of herein.

126.   Plaintiff, on behalf of Skyworks, has no adequate remedy at law.

## SECOND CLAIM
### Against the Individual Defendants for Violations of Section 10(b) and Rule 10b-5 of

**the Exchange Act**

127.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

128.   The Individual Defendants participated in a scheme to defraud with the purpose and effect of defrauding Skyworks. Not only is Skyworks now defending claims that it violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, but the Company itself is also one of the largest victims of the unlawful scheme perpetrated upon Skyworks by the Individual Defendants. With the price of its common stock trading at artificially inflated prices due to the Individual Defendants' misconduct, the Individual Defendants caused the Company to repurchase approximately 439,379 of its own shares at artificially inflated prices, damaging Skyworks.

129.   During the Relevant Period, the Individual Defendants also individually and in concert, directly and indirectly, by the use and means of instrumentalities of interstate commerce and/or of the mails, engaged and practiced in a continuous course of conduct designed to falsify the Company's press releases, public statements made in conference calls, and periodic and current reports filed with the SEC.

130.   The Individual Defendants employed devices, schemes and artifices to defraud while in possession of adverse, material, non-public information and engaged in acts, practices and a course of conduct that included the making of, or participation in the making of, untrue and/or misleading statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Skyworks not misleading.

131.   The Individual Defendants, as top executives and directors of the Company, are liable as direct participants in the wrongs complained of herein. Through their positions of control and authority as officers and directors of the Company, the Individual Defendants were able to and did control the conduct complained of herein and the content of the public statements disseminated by Skyworks.

132.    The Individual Defendants acted with scienter during the Relevant Period, in that they either had actual knowledge of the scheme and the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them. The Individual Defendants were the top executives of the Company, or received direct briefings from them, and were therefore directly responsible for the scheme set forth herein and for the false and misleading statements and/or omissions disseminated to the public through filings with the SEC.

133.    By virtue of the foregoing, the Individual Defendants have violated § 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

134.    Plaintiff, on behalf of Skyworks, has no adequate remedy at law.

## THIRD CLAIM
### Against the Individual Defendants for Breach of Fiduciary Duties

135.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

136.    Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Skyworks's business and affairs.

137.    Each of the Individual Defendants violated and breached their fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

138.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Skyworks.

139.    In breach of their fiduciary duties owed to Skyworks, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and/or misleading statements and/or omissions of material fact that failed to disclose, *inter alia*, that: (1) Defendants did not have reliable information with respect to Skyworks's projected

revenue outlook and anticipated growth; (2) Defendants had minimized the risks facing the Company with respect to macroeconomic fluctuations and smartphone upgrade cycles; and (3) the Company's long-standing relationship with its largest customer, Apple, did not ensure that Apple would continue its business relationship with the Company for its anticipated iPhone launch. As a result of the foregoing, the Company's statements about its business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

140.    In further breach of their fiduciary duties, the Individual Defendants failed to correct and/or caused the Company to fail to correct the false and/or misleading statements and/or omissions of material fact referenced herein, which renders them personally liable to the Company for breaching their fiduciary duties.

141.    In yet further breach of their fiduciary duties, during the Relevant Period, the Individual Defendants willfully or recklessly caused the Company to repurchase thousands of shares of its own common stock at artificially inflated prices before the fraud was exposed, while one of the Individual Defendants engaged in lucrative insider sales, netting proceeds of approximately $219,917.

142.    Also, in breach of their fiduciary duties, the Individual Defendants caused the Company to fail to maintain internal controls.

143.    The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements and representations. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Skyworks's securities.

144.    The Individual Defendants had actual or constructive knowledge that they had

caused the Company to improperly engage in the fraudulent scheme set forth herein and to fail to maintain internal controls. The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent scheme set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent scheme and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Skyworks's securities. The Individual Defendants, in good faith, should have taken appropriate action to correct the scheme alleged herein and to prevent it from continuing to occur.

145.    These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

146.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Skyworks has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

147.    Plaintiff, on behalf of Skyworks, has no adequate remedy at law.

### FOURTH CLAIM
### Against the Individual Defendants for Unjust Enrichment

148.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

149.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Skyworks.

150.    The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from Skyworks that was tied to the performance or artificially inflated valuation of Skyworks or received

compensation or other payments that were unjust in light of the Individual Defendants' bad faith conduct. This includes lavish compensation, benefits, and other payments provided to the Individual Defendants who breached their fiduciary duties to the Company.

151.   Plaintiff, as a shareholder and a representative of Skyworks, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, including from insider transactions, the redemption of preferred stock, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

152.   Plaintiff, on behalf of Skyworks, has no adequate remedy at law.

### FIFTH CLAIM
### Against the Individual Defendants for Abuse of Control

153.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

154.   The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Skyworks, for which they are legally responsible.

155.   As a direct and proximate result of the Individual Defendants' abuse of control, Skyworks has sustained significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

156.   Plaintiff, on behalf of Skyworks, has no adequate remedy at law.

### SIXTH CLAIM
### Against the Individual Defendants for Gross Mismanagement

157.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

158.   By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Skyworks in a manner

consistent with the operations of a publicly held corporation.

159.   As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Skyworks has sustained and will continue to sustain significant damages.

160.   As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

161.   Plaintiff, on behalf of Skyworks, has no adequate remedy at law.

## SEVENTH CLAIM
### Against the Individual Defendants for Waste of Corporate Assets

162.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

163.   The Individual Defendants caused the Company to pay the Individual Defendants excessive salaries and fees, to the detriment of the shareholders and the Company.

164.   As a result of the foregoing, and by failing to properly consider the interests of the Company and its public shareholders, the Individual Defendants have caused Skyworks to waste valuable corporate assets, to incur many millions of dollars of legal liability and/or costs to defend unlawful actions, to engage in internal investigations, and to lose financing from investors and business from future customers who no longer trust the Company and its products.

165.   In addition, the Individual Defendants caused the Company to repurchase thousands of shares of its own common stock at artificially inflated prices, thereby wasting the Company's assets.

166.   As a result of the waste of corporate assets, the Individual Defendants are each liable to the Company.

167.   Plaintiff, on behalf of Skyworks, has no adequate remedy at law.

## EIGHTH CLAIM
### Against Defendants Griffin and Sennesael for Contribution Under Sections 10(b)

Verified Shareholder Derivative Complaint

**and 21D of the Exchange Act**

168.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

169.   Skyworks and Defendants Griffin and Sennesael are named as defendants in the Securities Class Action, which asserts claims under the federal securities laws for violations of Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder. If and when the Company is found liable in the Securities Class Action for these violations of the federal securities laws, the Company's liability will be in whole or in part due to Defendant Griffin's and Defendant Sennesael's willful and/or reckless violations of their obligations as officers and/or directors of the Company.

170.   Defendants Griffin and Sennesael, because of their positions of control and authority as officers and/or directors of the Company, were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of the Company, including the wrongful acts complained of herein and in the Securities Class Action.

171.   Accordingly, Defendants Griffin and Sennesael are liable under 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

172.   As such, Skyworks is entitled to receive all appropriate contribution or indemnification from Defendants Griffin and Sennesael.

## **PRAYER FOR RELIEF**

FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

(a)    Declaring that Plaintiff may maintain this action on behalf of Skyworks, and that Plaintiff is an adequate representative of the Company;

(b)    Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Skyworks;

(c)    Determining and awarding to Skyworks the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(d)    Directing Skyworks and the Individual Defendants to take all necessary actions to reform and improve Skyworks's corporate governance and internal procedures to comply with applicable laws and to protect Skyworks and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's Bylaws and/or Certificate of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

1. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

2. a provision to permit the shareholders of Skyworks to nominate at least five candidates for election to the Board;

3. a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations;

(e)    Awarding Skyworks restitution from the Individual Defendants, and each of them;

(f)    Awarding Plaintiff the costs and disbursements of this action, including

///
///
///
///
///
///
///

Verified Shareholder Derivative Complaint

reasonable attorneys' and experts' fees, costs, and expenses; and

(g)    Granting such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.


Dated: March 31, 2025                    Respectfully submitted,

                                          **THE BROWN LAW FIRM, P.C.**

                                          <u>*/s/*Robert C. Moest                    </u>.
                                          Robert C. Moest, Of Counsel, SBN 62166
                                          2530 Wilshire Boulevard, Second Floor
                                          Santa Monica, CA 90403
                                          Telephone: (310) 915-6628
                                          Facsimile: (310) 915-9897
                                          Email: RMoest@aol.com

                                          *Attorneys for Plaintiff*

Verified Shareholder Derivative Complaint

## **VERIFICATION**

I, Leah Ard, am a plaintiff in the within action. I have reviewed the allegations made in this Shareholder Derivative Complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 30th day of March, 2025.

Signed by:

*Leah Ard*

3100A705D9E44A4...

Leah Ard